## Brown v Flushing Hosp. & Med. Ctr.

2024 NY Slip Op 31573(U)

May 2, 2024

Supreme Court, Kings County

Docket Number: Index No. 501864/2017

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 2nd day of May 2024.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------------------X
MARION J. BROWN,

      Plaintiff,

  -against-

FLUSHING HOSPITAL AND MEDICAL CENTER, GHADIR
SALAME, M.D. and ARMAND ASADOVRIAN, M.D.,

      Defendants.
----------------------------------------------------------------------------X

**DECISION & ORDER**

 Index No. 501864/2017
 Mo. Seq. 4

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 57 – 58, 59 – 79, 80, 84, 85 – 86, 88

Defendant Flushing Hospital Medical Center ("FHMC") moves (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment and dismissing this action in its entirety against the movant. Plaintiff opposes the motion.

Plaintiff Marion J. Brown ("Ms. Brown") commenced this action on January 30, 2017, asserting claims of medical malpractice in connection to surgery and post-operative care rendered on December 11, 2015 through December 22, 2015. The action has been discontinued by stipulation against the co-defendants Ghadir Salame, M.D. ("Dr. Salame") and Armand Asadourian, M.D. ("Dr. Asadourian"). FHMC is the only remaining defendant.

On December 9, 2015, Ms. Brown presented to the FHMC emergency department with abdominal pain and hematuria. At the time of her admission, she was 54 years old. She was diagnosed with an abdominal abscess and was subsequently found to have a tubo-ovarian abscess and large, fibrotic uterus. On December 11, 2015, she underwent an exploratory laparotomy, lysis of adhesions, supracervical hysterectomy, and bilateral salpingo-oophorectomy. According to hospital records, the surgery was jointly performed by general surgeon Dr. Asadourian and gynecology physician Dr. Salame, with the assistance of four residents.

Ms. Brown remained at FHMC until December 22, 2015, during which time she had a Wound Vacuum-Assisted Closure (VAC) which was regularly monitored and changed. Following her discharge, she received treatment at home from Visiting Nurse Service (VNS) while the Wound VAC was still in place. She was seen by Dr. Salame in his office on January 4, 2016 and January 11, 2016. During the latter visit, he removed the Wound

1

[* 1]

VAC and assessed the surgical incision site as "completely healed." During her final VNS visit on January 13, 2016, Ms. Brown was taught how to apply wet-to-dry dressings, and her case was closed with a note that she would continue to self-clean and care for the wound at home.

She treated with gynecologist Dr. Yvonne Noel and primary doctor Dr. Joan Stroud in the months following her surgery. Dr. Noel documented a superficial post-operative wound infection and some drainage from an opening at the top of the wound on January 27, 2016, and February 26, 2016. Dr. Noel advised Ms. Brown to continue home wound care and return for a follow-up appointment.

On May 4, 2016, Ms. Brown saw ob-gyn Dr. Noel, reporting wound drainage and continued difficulty healing from the December 2015 surgery. Dr. Noel found that there was "1 cm area of tissues protruding from wound" and referred her to the Maimonides Medical Center Wound Care Clinic. On examination at Maimonides, it was confirmed the wound had not completely healed and there was a possible foreign body extruding from the surgical site. On June 7, she underwent an abdominal/pelvic CT scan, which did not reveal a visible foreign body. On June 13, a biopsy recovered an "unknown" specimen described as a "white-tan portion of rubbery soft tissue measuring 1.0 x 0.6 x 0.2 cm" and "foreign material consistent with suture." On July 12, Dr. Stroud noted that she had "chronically draining sinus because of a foreign body left in wound," suspected to be "gauze coming out of wound."

Ms. Brown presented to general surgeon Dr. Raffaele Borriello on July 23, 2016, who recorded that "somewhere through the course of wound management a gauze was left in the wound and now the gauze is extruding out of the superior aspect of the midline wound." Dr. Borriello attempted to remove the visible gauze with a "moderate amount of force," but it could not be excised without surgical intervention.

Ultimately, Ms. Brown was admitted to New York Methodist Hospital Ambulatory Surgery Unit by Dr. Borriello for removal of the foreign body on August 3, 2016. The removed specimen was analyzed as four irregular segments of soft tissue and an object "that appear[ed] to be gauze measuring 7.3 x 4.0 x 0.1 cm in greatest dimension."

Plaintiff Ms. Brown alleges that the removed gauze was placed during her December 11, 2015 surgery, and alleges that FHMC, through its agents and employees, deviated from good and accepted standards of medical care by failing to remove the gauze during surgery and/or during her post-operative care. Plaintiff further alleges that this deviation proximately caused injuries to Ms. Brown, including infection, scarring, and the necessity of surgical excision.

Generally, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). "In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the

2

[* 2]

plaintiff's injuries" (*Hutchinson v. New York City Health and Hosps. Corp.*, 172 AD3d 1037, 1039 [2d Dept. 2019], quoting *Stukas*). "Thus, in moving for summary judgment, a physician defendant must establish, prima facie, 'either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries'" (*id.,* quoting *Lesniak v. Stockholm Obstetrics & Gynecological Servs., P.C.,* 132 AD3d 959, 960 [2d Dept. 2015]). "In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden" (*Bowe v Brooklyn United Methodist Church Home,* 150 AD3d 1067, 1068 [2d Dept 2017]). "When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. North Shore University Hospital at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022]). An expert opinion "must be based on facts in the record or personally known to the witness" (*Bacchus-Sirju v Hollis Women's Center,* 196 AD3d 670, 672 [2d Dept 2021]).

In support of this summary judgment motion, FHMC submits an affidavit from Nageswara Mandava, M.D. ("Dr. Mandava"), Chairmen of the Department of Surgery at FHMC. Dr. Mandava is a licensed physician in New York and is board certified in general surgery. The movant also submits relevant pleadings, medical records, and deposition transcripts.

Dr. Mandava offers his opinion as both an expert in the relevant field of medicine and as an employee of Defendant FHMC, familiar with the hospital's operating room procedures and protocols. There is no impediment to a party in the action offering expert opinions or testifying as an expert witness, so long as they present the relevant qualifications (*see In re Eshaghian,* 144 AD3d 1158, 1159 [2d Dept 2016]). However, a careful reading of the affidavit shows that Dr. Mandava never addresses the standard of care or opines as to whether Ms. Brown's treatment during her surgery and post-operative admission was in accordance with good and accepted medical standards.

Instead, Dr. Mandava relies on his firsthand knowledge of FHMC's operating room procedures and equipment to establish material facts in support of the motion. He avers that during the time of Ms. Brown's surgery in December 2015, the only type of surgical gauze used by FHMC was 4 x 4 inch "marked gauze" with a "radiopaque blue line woven through its center," and these pieces of gauze are never to be cut or altered. Dr. Mandava avers that this is the material referred to as a "sponge" in the operating room notes, although the size and radiopaque qualities were not specified. These sponges were counted three times along with other instruments, as documented in the surgery report (*see* Exhibit J, at 157). Dr. Mandava avers that the type of plain white gauze which was removed from Ms. Brown on August 3, 2016, was not the same material that would have been used during her surgery. Because the radiopaque blue line is visible on CT scans, Dr. Mandava opines that FHMC's gauze would have appeared in Ms. Brown's abdominal/pelvic x-ray on June 7, 2016, but those markings were not visible per the radiology report. Dr. Mandava further opines that the foreign object removed from Ms. Brown was smaller in size than FHMC's uncut surgical gauze, based on the description and photograph after it

3

was removed.

Following Ms. Brown's surgery, Dr. Mandava notes that she was treated with Wound VAC therapy, which consists of a piece of black foam being placed on or into the open wound and "connected via a suction tube to the Wound VAC vacuum pump device . . . which removes fluid from the wound." Dr. Mandava avers that no gauze is used with a Wound VAC at FHMC, only the black foam and a transparent adhesive film called Tegaderm. Ms. Brown's medical records refer to this "black foam" type dressing throughout her subsequent treatment, up to and including her discharge on December 22, 2015, and the records do not reference any other type of dressing or gauze placed on or inside her wound. The VNS nursing records also refer to using "black foam" as Wound VAC packing whenever the incision site was cleaned and changed. No other type of dressing is referenced in the medical records until her outpatient appointment with Dr. Salame on January 12, 2016, when he discontinued the Wound VAC and told Ms. Brown to apply "dry dressing" to the incision site. Ms. Brown was subsequently advised by VNS and Dr. Salame to use "wet-to-dry dressings" to clean and care for the wound on her own beginning on January 13, 2016. Dr. Mandava opines that unlike the black foam used by FHMC, wet-to-dry dressings "utilize white gauze." Therefore, based on his review of the medical records, relevant expertise, and knowledge of FHMC procedures, Dr. Mandava opines that there is no evidence the white gauze removed from Ms. Brown's body in August 2016 was placed during or after her surgery by any FHMC personnel. The specimen removed from Ms. Brown was a smaller, plain white gauze, which Dr. Mandava opines was most likely placed into an opening of her wound during the "wet-to-dry dressing" changes when she treated at home after her discharge from FHMC.

In opposition, Plaintiff submits an expert affirmation from Aaron Roth, M.D. ("Dr. Roth"), a licensed physician who is board certified in general surgery.

Based upon his review of the records and relevant expertise, Dr. Roth opines that it is *not* an undisputed fact that no plain white gauze was used during Ms. Brown's surgery. In fact, Dr. Roth cites to the operative notes which state that "the peritoneum and fascia was closed with nr 1 pds and the wound was lavaged and packed and a dressing placed" (Exhibit J, at 110). Dr. Roth distinguishes this "packing" of the wound from the type of surgical gauze with radiopaque markings described by Dr. Mandava. According to Dr. Roth, the radiopaque surgical gauze which Dr. Mandava identified as the "sponge" in the sponge count would be used "during the seminal parts of the surgery . . . up until the time that the fascia layer is closed, and the sponge count is complete." Dr. Mandava's affidavit does not address the "post-surgical packing" which is indicated by the operative note after the fascia was closed. Dr. Roth opines that, particularly in a patient with a large body habitus, the wound would be packed *after* the approximate closure of the subcutaneous and cutaneous layers. He opines that this packing would utilize general, non-surgical gauze "in an area where complete closure could not be accomplished," followed by placement of a Wound VAC, and the packing would later be removed during post-operative care. Controverting

4

[* 4]

Dr. Mandava's opinion that the size and appearance of the foreign object did not resemble FHMC's surgical sponges, Dr. Roth opines that the "size, location and appearance of the gauze" are consistent with post-surgical packing, where additional gauze is "placed in an area (top of the wound) where complete approximation of the wound could not be accomplished."

Dr. Roth also refutes Dr. Mandava's impression that the white gauze likely found its way into Ms. Brown's body when she was self-cleaning and caring for the wound after her discharge on December 22, 2015. He opines that based on "the extent of documented healing which occurred up until discharge" and "the depth of the foreign object, granulation, and need for surgical removal," it is impossible that the gauze could become so embedded under the skin from mere dressing changes, and it had to be placed at the time of her surgery. Dr. Roth concludes that it was a clear departure from good and accepted medical standards to fail to identify and remove the gauze during Ms. Brown's post-operative wound treatment at FHMC, and this resulted in her retention of a foreign object which ultimately had to be surgically removed.

As the Court noted, the movant's "expert" affidavit from Dr. Mandava relies primarily on his firsthand knowledge of FHMC's protocols and equipment, specifically the size and features of the hospital's standard surgical gauze. As Plaintiff's expert Dr. Roth points out in opposition, this affidavit does not eliminate all triable issues of fact. Dr. Mandava does not address the operative note that the area was washed and "packed" with unspecified material after fascia closure, which may or may not be the same type of uncut, radiopaque surgical gauze Dr. Mandava described as the "sponge." Additionally, the parties' experts offer conflicting opinions on whether it was possible for the gauze to be placed and left inside Ms. Brown's wound after her discharge from FHMC. While Dr. Mandava focuses on the type of material removed and the fact Ms. Brown testified the wound was "still open" when she began changing wet-to-dry dressings on her own, Dr. Roth opines that these dressing changes could not have been the source of such a deeply embedded foreign object after the wound had significantly healed. These issues of fact and credibility must be resolved by a jury, and therefore, FHMC's motion for summary judgment is denied.

Plaintiff further argues in the opposition papers, without bringing a cross motion, that she is entitled to summary judgment on the issue of liability under the doctrine of res ipsa loquitur. The Court has discretion to search the record "[i]f it shall appear that any party other than the moving party is entitled to a summary judgment" (CPLR 3212 [b]), though this authority is used sparingly, as the already "drastic remedy" of summary judgment is compounded by granting relief for which there was no proper notice of motion (*see* Mark C. Dillon, Prac. Commentaries, CPLR 3212:39). A denial of such relief is not appealable as of right (*see Ziegler v O'Neill,* 197 AD3d 1135, 1136 [2d Dept 2021]). Notwithstanding, FHMC had the opportunity to address Plaintiff's argument in their reply and did so.

"To establish a prima facie case of negligence under the doctrine of res ipsa loquitur, a plaintiff must

5

[* 5]

establish that (1) the event is of a kind that ordinarily does not occur absent negligence; (2) the event was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the plaintiff did not voluntarily create or contribute to the event" (*Dilligard v City of New York,* 170 AD3d 955 [2d Dept 2019]). "Since the doctrine concerns circumstantial evidence which allows, but does not require, the fact finder to infer that the defendant was negligent, 'res ipsa loquitur evidence does not ordinarily or automatically entitle the plaintiff to summary judgment'" (*Simmons v Neuman,* 50 AD3d 666, 667 [2d Dept 2008], quoting *Morejon v Rais Constr. Co.,* 7 NY3d 203, 209 [2006]). Generally, summary judgment or directed verdict on the basis of this doctrine "would happen only when the plaintiff's circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable" (*Morejon,* at 209).

That is not the case here, where there are clear issues of fact in dispute by the parties' experts, including the necessary element of whether the gauze entered Plaintiff's body while she was under "exclusive control" of FHMC or after she was discharged to continue caring for the wound at home. Accordingly, the Court declines Plaintiff's request to award summary judgment against the moving defendants.

It is hereby:

**ORDERED** that Defendant Flushing Hospital Medical Center's motion (Seq. No. 4) for an Order, pursuant to CPLR 3212, granting summary judgment and dismissing this action in its entirety, is **DENIED.**

This constitutes the decision and order of this Court.

ENTER.

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

6